# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERA KOVALENKO, | No. 2:18-CV-1038-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (ECF Nos. 10 and 26), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the Court are the parties' briefs on the merits (ECF Nos. 16 and 17).

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /
/ / /
/ / /
/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on January 29, 2015. See CAR 18.[1] In the application, Plaintiff claims disability began on February 18, 2012. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on June 7, 2017, before Administrative Law Judge (ALJ) Peter F. Belli. In a November 30, 2017, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

>   1. The claimant has the following severe impairment(s): degenerative disc disease of the lumbar spine, obesity, and hypertension;
>
>   2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
>   3. The claimant has the following residual functional capacity: claimant can perform medium work. The claimant can read and write simple English, can occasionally climb ladders, ropes or scaffolds, can frequently perform foot pedal operations and can occasionally endure exposure to dust, fumes, odors, gases, and pulmonary irritants;
>
>   4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 20-25.

After the Appeals Council declined review on February 23, 2018, this appeal followed.

## III. DISCUSSION

In her opening brief, plaintiff argues: (1) the ALJ erred by failing to consider the applicability of Listing 1.04B; (2) the ALJ failed to articulate sufficient reasons to reject the opinion of treating physician, Dr. Haddadan; (3) the ALJ failed to provide clear and convincing reasons to reject her subjective statements and testimony as not credible; and (4) the ALJ failed to properly evaluate lay witness evidence.

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on November 13, 2018 (ECF No. 14).

4

**A.    Listing 1.04B**

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

1.    ALJ's Analysis

The ALJ found "the claimant's back impairments do not satisfy any of the relevant musculoskeletal listings as she retains the ability to ambulate effectively." CAR 22. In examining the medical evidence, the ALJ noted a neurological examination revealed that "[Plaintiff] walked with a normal gait, demonstrated normal toe/heel walk and full range of motion in the back." Id. at 24.

2.    Plaintiff's Contentions

Plaintiff contends the ALJ erred by finding Plaintiff did not meet the requirements of Listing 1.04B for spinal arachnoiditis. According to Plaintiff:

> [T]he decision failed to consider Vera Kovalenko under listing 1.04B for arachnoiditis even though the evidence supports finding it satisfied. She had the required imaging evidence, multiple chartings of burning back pain, and evidence including the medical source statement of her treating pain management doctor that she needed to change position more often than every two hours (or, rather, in the case of Dr. Haddadan, he specifically checked the alternating position box but also checked the box for standard breaks, which are every two hours). All the criteria of this listing are satisfied on this record. (Statement of Facts, §C.)
> The facts that Ms. Kovalenko saw a pain management doctor, had seen another before that, and took multiple pain medications, including perhaps the clonazepam that netted her a benign psychological consultative exam, and including perhaps her testimony that doctors had advised her surgery wouldn't help, which the administrative law judge rather rudely interpreted the wrong way (transc., p.122), all lend support to finding listing 1.04B satisfied.
> Of course an ALJ who insisted Ms. Kovalenko had a medium capacity might have found a way to avoid the evidence that the listing critieria [sic] were satisfied and the extrinsic evidence that this made sense. But this ALJ didn't consider listing 1.04B at all, and his (vague) embrace of the nonexamining doctors doesn't save the error because none

of the state agency development reflects consideration of listing 1.04B. Simply saying Ms. Kovalenko could ambulate effectively wasn't even entirely correct, and ability to ambulate isn't a listing criterion; burning pain and the need to change position are. That Ms. Kovalenko could continue partway into her claim performing non-substantial amounts of theoretically "medium" work does not necessarily detract from this, because the need to move caused by the job, and the distraction of doing it, may have helped, up to a point. This was someone who told the CE psychologist she liked to knit, but couldn't sit to do it; yet it was only the year before that exam that she gave up more strenuous (but part-time) work entirely.

ECF No. 16, p. 7-8.

Plaintiff further argues:

. . .An 11/20/14 MRI showed any number of spinal abnormalities (see generally transc., p.657), and in particular that her "bilateral L3, bilateral L4 and left L5 nerve roots appear to be impinged" and "There is clumping of nerve roots within the thecal sac suggesting arachnoiditis." (Transc., p.658) A pain management specialist treated her since the same time as that MRI. (Transc., pp.83–100, 900–904). . . . She walked with a limp according to this doctor (transc., p.902) and told a consultative psychologist that she liked to read and knit, but it was difficult for her to sit for a long time. (Transc., p.864) Her back pain was described as burning. (Transc., pp.83, 87, 543 ["burning to back"], 555 ["Burning sensation in R lower back and R anterior thigh still present. Now occur[r]ing for one year"], 558 ["Burning sensation in lower back region," "Numbness over anterior thigh"][.] In a 3/18/17 medical source statement, this doctor assessed Ms. Kovalenko as able to lift 20 pounds occasionally and 10 frequently, but to be able to stand and walk less than two hours, sit less than six hours, and to need to alternate standing and sitting, though he checked a box saying regular workbreaks sufficed for this. (Transc., pp.986–987)

Id. at 3-4.

3. Disposition

To meet a listing requirement, a plaintiff must "satisf[y] all of the criteria of that listing, including any relevant criteria in the introduction." 20 CFR § 416.925. Section 1.00 of the Social Security Listing covers the musculoskeletal system and related disorders, including arachnoiditis. See 20 CFR Pt. 404, Subpt. P, App 1, § 1.00. Any listing within Section 1.00 must satisfy the general requirements in addition to the specific requirements of a particular listing. See id. The ability to effectively ambulate is a general requirement of all musculoskeletal

///

///

6

disorders:

> Regardless of the cause(s) of the musculoskeletal impairment, function loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason. . . .

Id.

Here, Plaintiff's argument only addresses the evidence concerning the specific requirements of arachnoiditis, e.g., burning sensation, imaging demonstrating compromised nerve roots. Plaintiff fails to address the ALJ's finding with respect to the ability to effectively ambulate. Thus, in finding that Plaintiff has generally failed to meet the requirements of any musculoskeletal disorder set forth in the Listing of Impairments, the ALJ did not err in failing to specifically consider whether Plaintiff met the requirements of arachnoiditis under listing 1.04B.

**B.    Evaluation of Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social

workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional,

8

without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

1. ALJ's Analysis

At Step 4, the ALJ evaluated the medical opinion evidence to determine Plaintiff's residual functional capacity. See CAR 23. The ALJ discussed the opinion of Dr. Haddadan[2] and afforded it little weight. The ALJ found:

> Physician Kayvan Haddadam, M.D. opined that the claimant could lift and/or carry twenty pounds occasionally and ten pounds frequently, could stand and/or walk for less than two hours in an eight hour day, should alternate standing and/or sitting, could occasionally climb, stoop and/or crawl, could not kneel and/or crouch and could frequently balance. (Ex. 18F). Dr. Haddadam's opinion is unpersuasive because it is unsupported by any examination findings or treatment notes. Additionally, Dr. Haddadam indicated that he had not treated claimant since 2012 (Ex. 18F/2). Thus, Dr. Haddadan's opinion is given little weight.

Id.

2. Plaintiff's Contentions

Plaintiff asserts the ALJ erred in Step 4 by rejecting Dr. Haddadan's opinion, which Plaintiff contends is supported by examination findings or treatment notes, contrary to the ALJ's finding. According to Plaintiff:

> The only way in which Dr. Haddadan's opinion was not supported by any examination findings or treatment notes is in the sense that the form on which it's expressed doesn't call for explanations, and so there are no references to examination findings on the form. However, his treatment records were in the file (transc., pp.900–904), and the Appeals Council erred flatly in finding that the 19 pages of Advanced Pain Diagnostic and Solutions records it refused to "consider and exhibit" did "not show a reasonable probability that it would change the outcome of the decision" (transc., p.2) — for these records included an additional day's chart, from November 2017, the month of the decision. (Transc., pp.83–102) Had the AC read both the ALJ dismissal of Dr. Haddadan and these records, its quoted statement would be conscious error. Even the Dr. Haddadan chart from late 2015 before the ALJ contained "examination findings and treatment notes." These included recording of "limp," back

---
[2] The ALJ mistakenly refers to Dr. Haddadan as "Dr. Haddadam."

9

|   |   |
|---|---|
| 1 | pain with straight leg-raising on both sides, piriformis tenderness, pain with lumbar range of motion, and multiple lumbar diagnoses including disc displacement. (Transc., p.902)[.] |
| 2 | |
| 3 | ECF No. 16, p. 8. |
| 4 | Plaintiff also contends the ALJ's reference to the lapse in time since Dr. Haddadan |
| 5 | evaluated Plaintiff is not supported by the record.  Plaintiff argues: |
| 6 | The idea that Dr. Haddadan "had not treated the claimant since 2012" was obviously incorrect. Ms. Kovalenko didn't begin seeing him till two years later. For this, its only other reason for discounting Dr. Haddadan's opinion, the decision cites the signature page of his MSS, which <u>twice</u> states "3/28/**17**."1 (Transc., pp.23, 987; emphasis added). |
| 7 | |
| 8 | |
| 9 | <u>Id.</u> at 8-9. |
| 10 | In a footnote, Plaintiff adds: |
| 11 | The November 2017 Advanced Pain Diagnostic chart in our record is signed by a Bingtao Lin, M.D., (transc., p.86), but Dr. Haddadan's MSS states specifically that he saw Ms. Kovalenko on March 28, 2017, the day he executed it. This chart must still be missing from our record; the specificity of the statement cannot easily be doubted, Ms. Kovalenko testified at her 6/7/17 hearing (transc., p.105) that she'd seen Dr. Haddadan about "a month or a month and a half ago; about that much" and also about six months before that (transc., p.123), and testimony showed there were problems obtaining records from that source. (Transc., pp.124–125) There must be multiple missing chart-days. |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | <u>Id.</u> at 8 n11. |
| 18 | 3.  <u>Disposition</u> |
| 19 | Defendant argues substantial evidence supports the rejection of Dr. Haddadan's |
| 20 | opinion. <u>See</u> ECF No. 17, p. 15.  This Court agrees.  Dr. Haddadan's opinion is controverted by |
| 21 | other medical evidence revealing normal physical examinations.  As a controverted opinion, his |
| 22 | opinion may be rejected for "specific and legitimate" reasons supported by substantial evidence. |
| 23 | <u>See</u> <u>Lester</u>, 81 F.3d at 830. |
| 24 | The Court finds the ALJ's analysis meets this standard.  The ALJ provided a |
| 25 | detailed report of the medical findings, which included physical examinations failing to reveal |
| 26 | severe back impairment. <u>See</u> CAR 24.  From these findings, the ALJ conducted a reasoned |
| 27 | analysis.  The ALJ also reasonably noted that Dr. Haddadan's opinion was unsupported by any |
| 28 | medical findings or notes.  The doctor's opinion of Plaintiff's functional abilities consists of |

marked boxes on a standard form without further detail.  Additionally, Plaintiff presents no other records of Dr. Haddadan's to support his seemingly conclusory opinion.  Thus, Dr. Haddadan's opinion was properly disregarded.  See Meanel, 172 F.3d at 1113-14 (holding a doctor's letter that briefly stated plaintiff's ailments and physical capacities was properly rejected for being conclusory and unsubstantiated by medical documentation).

The ALJ also emphasized that Dr. Haddadan had not treated Plaintiff since 2012.  The parties both agree this is a mistake because the record shows Dr. Haddadan assessed Plaintiff in 2015.  See ECF No. 17, p. 16-17.  To the extent this constitutes legal error, the error was harmless.  This Court concludes the ALJ would have reached the same result even with the correct date.  In spite of this error, the fact remains that Dr. Haddadan's opinion is unsupported by any objective findings or reports.  This reason alone is sufficient to disregard his opinion.  See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("We have held that the ALJ may 'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.'" (quoting Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996))).

### C. **Plaintiff's Credibility**

Plaintiff argues the ALJ did not meet the "clear and convincing" standard for disregarding her testimony.  The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

///

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

1. ALJ's Analysis

The ALJ found the medical evidence could reasonably be expected to produce Plaintiff's alleged symptoms but did not find Plaintiff's statements regarding the intensity, persistence, and other limiting effects of her symptoms to be consistent with medical evidence for four reasons. First, the ALJ cited inconsistencies between Plaintiff's allegations and the medical record:

> [A] physical examination revealed no edema, tenderness or neck pain (Ex. 1F/53). The neurological examination also revealed normal coordination (Id). Additional records revealed that the claimant walked with a normal gait, demonstrated normal toe/heel walk and full range of motion in the back. Additionally there was no tenderness to palpation over the paraspinal muscles and negative straight leg raises (Ex. 2F/8). However, physician's notes indicated decreased sensation over the right anterior thigh to fine touch (Id). MRI studies of the lumbar spine also revealed multilevel degenerative disc disease, moderate spinal stenosis in the thoracic spine, moderate foraminal stenosis at multiple levels, nerve root impingement and clumping of the nerve roots within the thecal sac suggesting arachnoiditis (Ex. 5F/14). However, physician's notes indicated only slightly decreased range of motion in lumbar spine (Ex. 5F/15). Progress notes again noted negative straight leg raises bilaterally (Ex. 8F/10).

/ / /

/ / /

> Additionally, physical examination studies normal paraspinous muscle tone, no evidence of spasms in the lumbar spine and no evidence of pain, crepitus or instability with motion (Ex. 13F/4). There were also no evident restrictions with flexion, extension or lateral bending (Id). The claimant was advised to engage in gentle stretching after a hot shower or heat pack and to use ice at night to address any pain (Ex. 13F/5).

CAR 24.

The ALJ also noted additional inconsistencies among Plaintiff's symptoms, treatment, and activity level:

> Moreover, the record reflects significant gaps in the claimant's history of treatment. Specifically, there is no evidence that the claimant sought any treatment for her alleged back impairment since 2015 (Ex. 13F). Such evidence suggests that her back pain is not as functionally limited as alleged.
>
> Furthermore, although the claimant has received treatment for the allegedly disabling impairment, the treatment has been essentially routine and/or conservative in nature. Specifically, the record reveals that the claimant's treatment has consisted primarily of medication management (Ex. 1F-17F).
>
> As mentioned earlier, the record reflects work activity after the alleged onset date. The record shows the claimant worked part time in 2015 as a housekeeper/daycare provider for the disabled (Ex. 2F/8). Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported.

Id.

2. <u>Plaintiff's Contentions</u>

Plaintiff argues the ALJ failed to provide "clear and convincing" reasons for disregarding her testimony. First, regarding the medical evidence, Plaintiff argues:

> [R]eason (1) invokes "The medical evidence" and so won't work standing alone. Also, at best, it presents a non-expert interpretation of the evidence, which therefore shouldn't be honored. Without belaboring every fact, multiple levels of nerve-root impingement and clumping of nerve roots suggesting arachnoiditis are pitted against "only slightly decreased" lumbar range of motion (transc.,p.24); but this is pitting apples against oranges: objective evidence supporting a severe pain syndrome against retained range of motion; and strict interpretation of the decision's language shows this is supposed to disprove allegations of "severe back impairment." (<u>Id.</u>) It doesn't, and besides the decision clearly lacks relevant expertise since it's readily inferable from listing 1.04 that the range-of motion, straight leg-raises, and normal gait the decision points to

14

| | |
|---|---|
| 1 | aren't the relevant barometers of arachnoiditis, a severe <u>pain</u> syndrome resulting in the need to change positions. |
| 2 | |
| 3 | ECF No. 16, p. 11-12. |

Next, addressing Plaintiff's alleged significant gaps in treatment, she asserts:

> . . .[T]he [ALJ's] decision points specifically to absence of treatment for back pain after 2015, (<u>id.</u>); but the 2017 Advanced Pain Diagnostic chart (transc.,pp.83–86) and Dr. Haddadan's statement in his MSS that he saw Ms. Kovalenko on an earlier date in 2017 disprove this. Moreover, Ms. Kovalenko's (and her representative's)hearing testimony (fn.11, <u>supra</u>) confirms Dr. Haddadan and indicates there was yet more treatment. The decision had that evidence, and it made no finding Ms. Kovalenko was not credible about this. (Cf. <u>Trevizo</u>, <u>supra</u>, at 680 ["The ALJ did not evaluate that claim or find it to be unbelievable"].) A factually incorrect reason for disbelieving Ms. Kovalenko can't support disbelieving her[.]

<u>Id.</u> at 12.

Third, Plaintiff argues the ALJ's description of her course of treatment is inconsistent with other findings:

> Reason (3). . . is significantly contradicted by the decision itself, later, when it says that "adherence to a regimen of prescription medications would ordinarily weigh <u>in favor of</u> her credibility" (<u>id.</u>; emphasis added); and it is totally contradicted by Ms. Kovalenko's testimony Dr. Haddadan, her pain specialist, told her surgery wouldn't help. (Transc., p.122) This conforms with common understanding about arachnoiditis (fn.10, <u>supra</u>; cf., e.g., https://www.ninds.nih.gov/Disorders/All-Disorders/Arachnoiditis - Information-Page ), and the decision fails to specify what <u>less</u> routine and <u>less</u> conservative treatment would make Ms. Kovalenko more believable. This reason does not meet the applicable "specific, clear and convincing reason" standard, which "is not an easy requirement to meet." (<u>Trevizo</u>, <u>supra</u>, at 678, quoting <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014–15 (9th Cir. 2014).

<u>Id.</u> at 12-13.

Finally, as to the ALJ's analysis of Plaintiff's work activity, Plaintiff contends:

> . . .[T]he [ALJ's] decision relies on Ms. Kovalenko's non-substantial work activity in 2015 as somehow disproving her symptom allegations. (Transc., p.24) But Ms. Kovalenko didn't work in 2015 (transc, p.326), and in any case this is an illegitimate reason. (<u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1037, 1039 (9th Cir. 2007) [failed work attempt (which by definition **is** SGA activity) not a clear and convincing reason for claimant noncredibility]; <u>Reddick v. Chater</u>, 167 F.3d 715, 722 (9th Cir. 1998) ["Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in

the face of their limitations"].) Plaintiff has also already argued that with a pain syndrome requiring frequent position changes, up to a point, Ms. Kovalenko's part-time work (until she couldn't continue by 2014) would have kept her distracted and changing positions.

Id. at 13.

3. Disposition

The Court finds the ALJ failed to establish legally sufficient clear and convincing reasons for discrediting Plaintiff's testimony. As to Plaintiff's treatment record, the ALJ specifically noted Plaintiff's lack of treatment since 2015. Plaintiff, however, unsuccessfully attempted to submit evidence dating from 2016-2017 to the appeals council. The appeals council found:

> You submitted evidence from Dr. Ansari dated April 26, 2016 to December 7, 2017 (32 pages); from Dr. Tristant dated June 6, 2017 (3 pages); from Whole Health Community Clinic dated July 5, 2017 to October 5, 2017 (2012); from Advanced Pain Diagnostic and Solutions dated October 20, 2015 to November 8, 2017 (19 pages); and from Diagnostic Radiological Imaging Scripps dated October 20, 2014 (2 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence.

ECF No. 14-3, p. 3.

A significant portion of this unconsidered evidence relates to Plaintiff's alleged disability after she filed her disability claim and before the ALJ rendered his decision. Thus, it is relevant evidence. The appeals council's justification for excluding this evidence is troubling. To the extent the evidence was not reviewed, the Court fails to see how the council determined the merit of the evidence. Conversely, if the council did review the evidence and find it would not reasonably affect the outcome, it has failed to provide more than a conclusory justification for this determination. Because evidence speaking to Plaintiff's treatment since 2015 was not properly considered, lack of evidence in this regard fails to present a "clear and convincing" reason to discredit Plaintiff's testimony.

/ / /

/ / /

/ / /

1    Similarly, the ALJ found Plaintiff's use of prescription medication constituted a
2    conservative course of treatment. The unreviewed evidence discussed above, however, speaks to
3    additional treatment Plaintiff sought during her period of alleged disability. Thus, Plaintiff's
4    course of treatment, as represented by the current record, is an insufficient ground for rejecting
5    her testimony.
6        Turning next to Plaintiff's activities, the ALJ found Plaintiff participated in part-
7    time work after the date she alleges her disability began.[3] However, the mere fact that Plaintiff
8    worked part-time, without more, is not a clear and convincing reason to disregard her testimony.
9    The Social Security Act does not require total incapacitation to obtain benefits nor should
10   "[d]isability claimants [] be penalized for attempting to lead normal lives in the face of their
11   limitations." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). To meet the clear and
12   convincing standard, the ALJ would have to link Plaintiff's part-work work with her ability to
13   sustain full-time work. The ALJ has failed to do so. Plaintiff's progress report states Plaintiff
14   engaged in part-time work as a housekeeper/caregiver. It does not detail her abilities, duties, or
15   activities performed during work. Without this information, the ALJ is unable to determine
16   whether Plaintiff's part-time work is inconsistent with her alleged inability to perform sustained
17   work. Thus, the supposed inconsistency between Plaintiff's former part-time work and her
18   testimony does not satisfy the requirement of a clear, convincing, and specific reason to discredit
19   her testimony.
20       Finally, the ALJ noted the objective medical record contradicted Plaintiff's
21   testimony. Where it is not the only reason for discrediting a plaintiff's testimony, such
22   inconsistencies may constitute clear and convincing reasoning. See Thomas v. Barnhart, 278
23   F.3d 947, 959 (9th Cir. 2001). This is not the case here, however. As discussed above, none of
24   the ALJ's previous justifications for disregarding Plaintiff's testimony provide a sufficiently clear

---

[3] The ALJ stated Plaintiff participated in part-time work in 2015. See CAR 24. This date is incorrect. The exhibit in question states that it was *printed* on April 28, 2015. The date of Plaintiff's progress note is April 30, 2013. See ECF No. 14. This date, however, is still more than a year after Plaintiff alleged disability began.

and convincing basis for his decision. Without any additional rationale supported by substantial evidence, this Court cannot accept the ALJ's decision solely based on these inconsistencies.

For these reasons, the ALJ failed to provide clear and convincing reasoning for discrediting Plaintiff's testimony. The case will be remanded for further proceedings.

### D. Lay Witness Evidence

Plaintiff argues the ALJ also did not meet the "clear and convincing" standard for disregarding her sister's testimony. In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. When rejecting third party statements which are similar in nature to the statements of the plaintiff, the ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

#### 1. ALJ's Analysis

In disregarding Plaintiff's sister's testimony, the ALJ reasoned:

> The claimant's sister, Anna Kovalenko, submitted a Third Party Function Report where she alleges that the claimant has difficulty performing household chores, sitting, standing, walking, bending, suffers from severe back pain and fatigue, has difficulty sleeping, cannot interact with others due to severe allergic reactions, does not socialize regularly, has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, completing tasks, concentrating, using her hands, managing stress and adapting to changes in routine (Ex. 4E). Ms. Kovalenko's lay opinion cannot be afforded significant weight because it, like the claimant's, is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.

CAR 23-24.

2. <u>Plaintiff's Contentions</u>

Plaintiff argues the ALJ's reasoning fails to meet the "clear and convincing standard." See ECF No. 16, p. 9. Plaintiff argues:

> Here, Ms. Kovalenko's sister's "testimony" is described in a manner showing it to resemble her sister's before being disregarded with the above single sentence. (Transc., p.23) The decision's single sentence of rejection also expressly links its reasons for rejecting both the sister and Ms. Kovalenko together. (Transc., pp.23–24 ['because it, like the claimant's is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case."].) By doing this, however, the decision negates its gestures toward having rejected either party for any reason other than supposed inconsistency with medical evidence, which inconsistency can only be one reason for rejecting such lay testimony and not a stand-alone reason. A decision can't disregard lay testimony solely because it is not substantiated by objective medical evidence. (<u>Trevizo v. Berryhill</u>, 871 F.3d 664, 679 (9th Cir. 2017) (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006); cf. the factors to be considered at the second symptom evaluation step in 20 C.F.R. §§404.1529/416.929 and SSR 16–3p.) Further, as seen, any such "preponderance" of opinions and observations is merely compounded of there being two nonexaminers saying essentially the same thing based on review of the same record, versus one treating specialist — plus the decision's own interpretation of the meaning of that record, which makes this rationale self-servingly circular; and, moreover, the decision's own interpretation was sufficiently flawed as not to recognize arachnoiditis when arachnoiditis stared the decision in the face.

<u>Id.</u> at 11.

3. <u>Disposition</u>

In disregarding lay witness testimony, the ALJ must discuss his reasoning, see <u>Dodrill</u>, 12 F.3d at 919, but he need not address the testimony of each lay witness on an individual basis. See <u>Molina</u>, 674 F.3d at 1114 ("If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." ); <u>Valentine v. Comm'r SSA</u>, 574 F.3d 685, 694 (9th Cir. 2009).

To the extent this Court finds the ALJ erred in discrediting Plaintiff's testimony, it finds the ALJ has equally erred in discrediting Plaintiff's sister's testimony. Had the ALJ provided sufficient reasoning for discrediting Plaintiff's testimony, he may have similarly discredited Plaintiff's sister's testimony. Instead, the ALJ provided no clear and convincing rationale. Therefore, his analysis fails to provide an acceptable basis for disregarding her sister's

testimony either individually or in the aggregate.  For this additional reason, the case will be remanded for further proceedings.

## IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is granted;
2. Defendant's motion for summary judgment (ECF No. 17) is denied;
3. The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  August 7, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE